**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**
**WESTERN DIVISION**

**GEMARIO C. BROOKS**                                                **PLAINTIFF**

**VS.**                                          **CAUSE NO.:** 5:17-CV-141-DCB-MTP

**GENERAL MOTORS, LLC,**
**D/B/A NEW GM**                                                      **DEFENDANT**

<u>**COMPLAINT**</u>

**I.    PARTIES**

1.      Plaintiff, Gemario C. Brooks, is an adult resident citizen of Port Gibson, Claiborne County, Mississippi.

2.      Defendant General Motors LLC ("New GM") is a Delaware limited liability company with its principal place of business located at 300 Renaissance Center, Detroit, Michigan, and is a citizen of the States of Delaware and Michigan. The sole member and owner of General Motors LLC is General Motors Holding LLC. General Motors Holdings LLC is a Delaware limited liability company with its principal place of business in the State of Michigan. The sole member and owner of General Motors Holdings LLC is General Motors Company, which is a Delaware Corporation with its principal place of business in the State of Michigan, and is a citizen of the States of Delaware and Michigan. New GM was incorporated in 2009 and, effective on July 10, 2009, acquired substantially all assets and assumed certain liabilities of General Motors Corporation through a Section 363 sale under Chapter 11 of the U.S. Bankruptcy Code. It is undisputed that New GM had express obligations, as well as obligations by law, to comply with the certification, reporting, and recall requirements of the National Traffic and Motor Vehicle Act and the Transportation Recall Enhancement, Accountability and Documentation Act with respect to all Old and New GM vehicles.

## II.    JURISDICTION

3.    This Court has subject matter jurisdiction and personal jurisdiction to entertain this action.

## III.    VENUE

4.    Venue of this action is invoked pursuant to U.S.C. §§ 1332 and 1390 in that the facts alleged herein occurred within Claiborne County, Mississippi.  Plaintiff seeks over $75,000.00 in damages and complete diversity exists between the parties.

## IV.    FACTS

5.    On November 23rd, 2014, while operating his 2009 Chevrolet Impala under normal conditions, Plaintiff's engine suddenly and without warning shut off, causing the steering to lock up. As a result of these malfunctions, Plaintiff's vehicle left the roadway and flipped onto its roof.

6.    No airbags were deployed.

7.    Defendant GM is involved in an ongoing multi-district litigation in the United States District Court for the Southern District of New York, *In re: General Motors LLC Ignition Switch Litigation;* 14-MD2542; Case 1:14-md-02543-JMF.  The Fourth Amended Complaint pending in that matter [Doc. 3356] contains a lengthy but relevant summary of facts illustrating the defective nature of GM's vehicles, including the vehicle involved in the Plaintiff's accident, and illustrating GM's tortious conduct concerning the concealment of its vehicles' defects from the public at large, including the Plaintiff.  To the extent relevant, the facts, allegations, and claims for relief contained in [Doc. 3356] of MDL 2542 are incorporated fully herein by reference.  As a direct and proximate result of the Defendant's actions, Plaintiff sustained bodily injuries and damages.

## V.    CAUSES OF ACTION

### COUNT I

### VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT
### (MISS. CODE. ANN. § 75-24-1, et seq.)

8.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

9.    The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." MISS. CODE. ANN. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(i) advertising goods or services with intent not to sell them as advertised."

10.    New GM participated in deceptive trade practices that violated the Mississippi CPA as described herein, including representing that Defective Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Defective Vehicles are of a particular standard and quality when they are not; and advertising Defective Vehicles with the intent not to sell them as advertised.  The defects in each vehicle include not only the specific defect (e.g., the Delta Ignition Switch), but also include the defective process through which New GM built cars, a process that included cost-cutting, minimizing the importance of safety issues, siloing, the depletion of resources devoted to recognizing and studying safety issues, the failure to follow acceptable engineering and inventory processes concerning parts management,

and the failure to follow a proper FMEA process. All of these defective processes would be material to a reasonable consumer.

11.    New GM's actions, as set forth above, occurred in the conduct of trade or commerce.

12.    In the course of its business, New GM concealed the defects in Plaintiff's vehicle as described herein and otherwise engaged in activities with a tendency or capacity to deceive. New GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of the Defective Vehicles.

13.    From the date of its inception on July 10, 2009, New GM knew of serious defects affecting the Defective Vehicle owned by Plaintiff, because of (i) the knowledge of Old GM personnel who transferred to New GM; (ii) Old GM documents and databases that transferred to New GM; (iii) continuous reports, investigations, and notifications from regulatory authorities; and (iv) ongoing performance of New GM's TREAD Act obligations, as discussed above. New GM acquired additional information concerning the serious defects and safety issues impacting Plaintiff's vehicle years ago, but concealed all of that information until its forced revelation in 2014.

14.    By failing to disclose and by actively concealing the defects in Plaintiff's vehicle, which it marketed as safe, reliable, and of high quality, New GM engaged in unfair and deceptive business practices in violation of the Mississippi CPA.

15.    In the course of New GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in Plaintiff's vehicle.

16.    New GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of their vehicles.

17.    New GM intentionally and knowingly misrepresented material facts regarding the Defective Vehicles with the intent to mislead Plaintiff.

18.    New GM knew or should have known that its conduct violated the Mississippi CPA.

19.    As alleged above, New GM made material statements about the safety and reliability of the Defective Vehicles and the New GM brand that were either false or misleading.

20.    New GM owed Plaintiff a duty to disclose the true safety and reliability of the Defective Vehicles because New GM: (a) possessed exclusive knowledge about the defects in the Defective Vehicles; (b) intentionally concealed the foregoing from Plaintiff; (c) made incomplete representations about the safety and reliability of the Defective Vehicles, while purposefully withholding material facts from Plaintiff that contradicted these representations; and/or (d) had duties under the TREAD Act and related regulations to disclose and remedy the defects.

21.    Because New GM fraudulently concealed the defects in New GM vehicles, New GM Defective Vehicle owners were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from defects. Further, Plaintiff and other owners had to spend their time and money to bring their Defective Vehicles in for repair. Had New GM Defective Vehicle owners been aware of the defects in their vehicles, they would have either not have bought their Defective Vehicles or would have paid less for them.

22.     Old GM Defective Vehicle owners were also harmed by New GM's unfair and deceptive trade practices since their vehicles were worth less as the result of New GM's concealment of, and failure to remedy, the defects. Further, once the truth came out about the defects, the value of Old GM Defective Vehicles greatly decreased to well-below the value the vehicles would have had in the absence of the defect. This diminished value is directly attributed to New GM's dishonesty and omissions with respect to the quality and safety of the Defective Vehicles.

23.     New GM's concealment of the defects in Plaintiff's vehicles was material to Plaintiff.

24.     Plaintiff suffered ascertainable loss caused by New GM's misrepresentations and its concealment of and failure to disclose the defects in their vehicles. Plaintiff would have paid less for their vehicles or would not have purchased or leased them at all.

25.     Regardless of the time of purchase or lease, Plaintiff would not have maintained and continued to drive the Defective Vehicle had they been aware of New GM's misconduct. By assuming TREAD Act responsibilities with respect to Old GM vehicles, New GM effectively undertook the role of manufacturer of those vehicles because the TREAD Act on its face only applies to vehicle manufacturers. 49 U.S.C. § 30118(c). New GM had an ongoing duty to all Defective Vehicle owners to refrain from unfair and deceptive acts or practices under the Mississippi CPA—regardless of when those owners acquired their vehicles.

26.     New GM's violations present a continuing risk to Plaintiff as well as to the general public. In particular and as alleged herein, New GM's purported "fix" for the Delta Ignition Switch Vehicles and the other Defective Ignition Switch Vehicles is inadequate and

those cars are therefore still defective. New GM's unlawful acts and practices complained of herein affect the public interest.

27. As a direct and proximate result of New GM's violations of the Mississippi CPA, Plaintiff has suffered injury-in-fact and/or actual damage as alleged above. As a direct result of New GM's misconduct, Plaintiff incurred damages..

28. Plaintiff seeks actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

## COUNT II

## FRAUD BY CONCEALMENT

29. Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

30. New GM concealed and suppressed material facts concerning the serious safety defects in Plaintiff's vehicle.

31. New GM sold a Defective Vehicle to Plaintiff without disclosing the defects, and took active steps to conceal the defects in the Defective Vehicles from regulators and consumers.

32. In order to conceal and suppress the defects from the owners and lessees of the Defective Vehicles, New GM went so far as to instruct its employees not to use terms that could notify NHTSA or the public as to the existence of a safety issue.

33. New GM concealed and suppressed the defects in the Defective Vehicles with the intent to deceive Plaintiff.

34. New GM did so in order to falsely assure purchasers, lessees, and owners of the Defective Vehicles that vehicles they were purchasing, leasing or already owned were safe, and to avoid the cost and negative publicity of a recall. The concealed information was material to

consumers, both because it concerned the quality and safety of the Defective Vehicles and because the information played a significant role in the value of the vehicles.

35.     New GM had a duty to disclose the defects in the Defective Vehicles because they were known and/or accessible only to New GM; New GM had superior knowledge and access to the facts; and New GM knew the facts were not known to, or reasonably discoverable, by Plaintiff. New GM also had a duty to disclose because it made many affirmative representations about the safety, quality, and lack of defects in New GM vehicles, as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the defects in the Defective Vehicles. Having provided information to Plaintiff, New GM had the duty to disclose not just the partial truth, but the entire truth. Finally, New GM had a duty to monitor all of the Defective Vehicles (including Old GM Vehicles) under the TREAD Act and implementing regulations, including the duty to promptly notify consumers of known safety defects.

36.     New GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost New GM money, and it did so at the expense of Plaintiff.

37.     On information and belief, New GM has still not made full and adequate disclosure and continues to defraud Plaintiff and conceal material information regarding defects that exist in the Defective Vehicles.

38.     Plaintiff was unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased their Defective Vehicles manufactured by New GM; and/or would not have continued to own and drive their Old GM Defective Vehicles or would have taken other affirmative steps.

Plaintiff's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, including Plaintiff.

39.    Because of the concealment and/or suppression of the facts, Plaintiff sustained damage. Plaintiff who purchased New GM Defective Vehicles did not get the benefit of their bargain since the Defective Vehicles were worth less than they would have been without the defects, and because they own vehicles that diminished in value as a result of New GM's concealment of, and failure to timely disclose, the defects. They also incurred repair costs as alleged above. Had they been aware of the concealed defects that existed in the Defective Vehicles, Plaintiff who purchased a New GM Defective Vehicle would have paid less for the vehicle or would not have purchased or leased it at all; and Plaintiff, regardless of the time of purchase or lease, would not have maintained their Defective Vehicle. As alleged above, all Old GM Defective Vehicles suffer from diminished value attributable to New GM's dishonesty and omissions with respect to the quality and safety of these vehicles.

40.    Accordingly, New GM is liable to Plaintiff for damages in an amount to be proven at trial.

41.    New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (MISS. CODE ANN. § 75-2-314)

42.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

43.     New GM was a merchant with respect to motor vehicles within the meaning of MISS. CODE ANN. § 75-2-104(1).

44.     Under MISS. CODE ANN. § 75-2-314, a warranty that the Defective Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff purchased or leased the Defective Vehicle from New GM on or after July 10, 2009.

45.     The Defective Vehicle, when sold and at all times thereafter, were not merchantable and are not fit for the ordinary purpose for which cars are used.

46.     The Defective Ignition Switch Vehicles are inherently defective in that there are defects in the ignition switch systems that cause sudden unintended stalling to occur, with the attendant shut down of power steering and power brakes and the nondeployment of airbags in the event of a collision, thereby causing an increased likelihood of serious injury or death.

47.     The Power Steering Defect Vehicles are inherently defective in that there are defects in the vehicles that can cause the loss of power steering assist, resulting in an increased risk of accident.

48.     The Side Airbag Defect Vehicles are inherently defective in that there are defects in the wiring harness connectors that can cause the side impact airbags (SIABs) and seatbelt pretensioners not to deploy in the event of a collision, thereby causing an increased likelihood of serious injury or death.

49.     New GM was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiffs and others before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

50.     As a direct and proximate result of New GM's breach of the implied warranty of merchantability, Plaintiff has been damaged in an amount to be proven at trial.

**COUNT IV**

**FRAUD BY CONCEALMENT OF THE RIGHT
TO FILE A CLAIM AGAINST OLD GM IN BANKRUPTCY**

51.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

52.     New GM was aware of the Delta Ignition Switch Defect in millions of vehicles sold by Old GM from the moment it came into existence upon entry of the Sale Order and Sale Agreement by which New GM acquired substantially all the assets of Old GM.

53.     As the Bankruptcy Court found, "[a]s of June 2009, when the entry of the Sale Order was sought, Old GM had enough knowledge of the Ignition Switch Defect to be required … to send out mailed recall notices to owners of affected Old GM vehicles." The Second Circuit Court of Appeals recently affirmed the Bankruptcy Court's finding based on its review of the full evidentiary record that gave rise to that finding. New GM necessarily had this same knowledge from day one of its existence, as the Bankruptcy Court found that "at least 24 Old GM personnel (all of whom were transferred to New GM), including engineers, senior managers and attorneys, were informed or otherwise aware of the defect prior to the Sale Motion."

54.     Plaintiff did not receive notice of the defect prior to the entry of the Sale Order. No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Sale Motion mentioned the defect.

55.     In September 2009, the Bankruptcy Court entered the Bar Date Order, establishing November 30, 2009, as the deadline (the "Bar Date") for proof of claims to be filed against Old GM.

56.    Because New GM concealed its knowledge of the defect, Plaintiffs did not receive notice of the defect prior to the passage of the Bar Date. No recall occurred, and neither the direct mail notice nor the publication notice sent in connection with the Bar Date Order mentioned the defect.

57.    In 2011, the Bankruptcy Court approved a Chapter 11 Plan under which the General Unsecured Creditors' Trust ("GUC Trust") would distribute the proceeds of the bankruptcy sale to, among others, the holders of claims that were ultimately allowed.

58.    The out-of-pocket consideration provided by New GM for its acquisition of Old GM consisted of 10% of the post-closing outstanding shares of New GM common stock and two series of warrants, each to purchase 7.5% of the post-closing shares of New GM (collectively, the "New GM Securities").

59.    Through an "accordion feature" in the Sale Agreement, New GM agreed that it would provide additional consideration if the aggregate amount of allowed general unsecured claims exceeded $35 billion. In that event, New GM would be required to issue additional shares of New GM Common Stock for the benefit of the GUC Trust's beneficiaries.

60.    As of September 30, 2014, the total amount of Allowed Claims was approximately $31.854 billion, and the total amount of Disputed Claims was approximately $79.5 million.

61.    As of September 30, 2014, the GUC Trust had distributed more than 89% of the New GM Securities. After a subsequent November 12 distribution, the total assets of the GUC Trust were approximately $773.7 million—all or nearly all of which is already slated to pay the GUC Trust's expenses and existing beneficiaries of the Trust.

62. The Bankruptcy Court found that Plaintiffs were deprived of Due Process because they did not receive notice of the defect prior to the passage of the Bar Date, and the Second Circuit Court of Appeals affirmed this ruling. While the Bankruptcy Court found that these vehicle owners may seek leave to file late claims, it ruled that the doctrine of equitable mootness bars Plaintiffs from tapping into the GUC Trust assets. The Second Circuit Court of Appeals vacated the equitable mootness holdings on the grounds that it was not yet ripe for review.

63. But for New GM's fraudulent concealment of the defect, Plaintiff would have filed claims against Old GM before the Bar Date.

64. Had Plaintiff filed timely claims before the Bar Date, the claims would have been allowed.

65. Had Plaintiff's claims been allowed, the "accordion-feature" of the Sale Agreement would have been triggered, and New GM would have been required to contribute additional New GM Securities to the GUC Trust for the benefit of Delta Ignition Switch Defect Bankruptcy Class Members across the country.

66. New GM's concealment and suppression of the material fact of the Delta Ignition Switch Defect over the first several months of its existence served to prevent the filing of claims by Plaintiff and thereby helped New GM avoid the accordion-feature payments it would otherwise have had to make.

67. New GM had a duty to disclose the Delta Ignition Switch Defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiff. These omitted and concealed facts were material because they directly impacted the safety and the value of the Delta Ignition Switch Vehicles owned or leased by Plaintiff, who had

a limited period of time in which to file a claim against the manufacturer of the vehicles, Old GM. New GM also had monitoring and disclosure duties under the TREAD Act and its implementing regulations that required the disclosure of the defect. 4251. Plaintiff was unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts. Plaintiff's actions were justified. New GM was in exclusive control of the material facts and such facts were not known to the public, including Plaintiff.

68.     Because of the concealment and/or suppression of the facts, Plaintiff sustained damage because they lost their chance to file a claim against Old GM and seek payment from the GUC Trust (supplemented, if necessary, by the accordion feature). Had they been aware of the ignition switch defects that existed in their vehicles, Plaintiff would have timely filed claims and would have recovered from the GUC Trust. 4

69.     Accordingly, New GM is liable to Plaintiff for their damages in an amount to be proven at trial.

70.     New GM's acts were done maliciously, oppressively, deliberately, with intent to defraud and prevent Plaintiff from filing proofs of claim, and in reckless disregard of Plaintiff's rights and well-being to enrich New GM. New GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT V

## UNJUST ENRICHMENT

71.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

72.     This claim is pleaded in the alternative to any contract-based claims brought on behalf of Plaintiff.

73.     New GM has received and retained a benefit from Plaintiff and inequity has resulted.

74.     New GM has benefitted from selling and leasing the Defective Vehicles, for more than they were worth as a result of their concealed defects, at a profit, and Plaintiff has overpaid for the cars and been forced to pay other costs.

75.     With respect to the Defective Vehicles purchased before New GM came into existence that were still on the road after New GM came into existence and as to which New GM had unjustly and unlawfully determined not to recall, New GM benefitted by avoiding the costs of a recall and other lawsuits, and further benefitted from its statements about the success of New GM.

76.     Thus, Plaintiff conferred a benefit on New GM.

77.     It is inequitable for New GM to retain these benefits.

78.     Plaintiff was not aware of the true facts about their Defective Vehicles, and did not benefit from New GM's conduct.

79.     New GM knowingly accepted the benefits of its unjust conduct.

80.     As a result of New GM's conduct, the amount of its unjust enrichment should be disgorged, in an amount according to proof.

## COUNT VI

### SUCCESSOR LIABILITY CLAIM FOR VIOLATION OF MISSISSIPPI CONSUMER PROTECTION ACT (MISS. CODE. ANN. § 75-24-1, et seq.)

81.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

82.    This claim is brought as a successor liability claim, wherein Plaintiff is suing New GM for the conduct of Old GM. Under the ruling of the Second Circuit Court of Appeals, the bankruptcy Sale Order's "free and clear" provisions do not apply to Plaintiffs, so they are free to assert this successor liability claim without impediment from the Sale Order.

83.    The Mississippi Consumer Protection Act ("Mississippi CPA") prohibits "unfair or deceptive trade practices in or affecting commerce." MISS. CODE. ANN. § 75-24-5(1). Unfair or deceptive practices include, but are not limited to, "(e) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;" "(g) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" and "(i) Advertising goods or services with intent not to sell them as advertised."

84.    Old GM participated in deceptive trade practices that violated the Mississippi CPA as described herein, including representing that Delta Ignition Switch Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that Delta Ignition Switch Vehicles are of a particular standard and quality when they are not; and advertising Delta Ignition Switch Vehicles with the intent not to sell them as advertised.

85.    Old GM's actions, as set forth above, occurred in the conduct of trade or commerce.

86.    In the course of its business, Old GM concealed the defects in Plaintiff's vehicles as described herein and otherwise engaged in activities with a tendency or capacity to deceive. Old GM also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material

fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Delta Ignition Switch Vehicles.

87.     Old GM knew of serious defects affecting the Delta Ignition Switch Vehicles owned or leased by Plaintiff.

88.     By failing to disclose and by actively concealing the defects in Plaintiff's vehicles, which it marketed as safe, reliable, and of high quality, Old GM engaged in unfair and deceptive business practices in violation of the Mississippi CPA.

89.     In the course of Old GM's business, it willfully failed to disclose and actively concealed the dangerous risk posed by the defects in Plaintiff's vehicles.

90.     Old GM's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Plaintiff, about the true safety and reliability of their vehicles.

91.     Old GM intentionally and knowingly misrepresented material facts regarding the Delta Ignition Switch Vehicles with the intent to mislead Plaintiff.

92.     Old GM knew or should have known that its conduct violated the Mississippi CPA.

93.     As alleged above, Old GM made material statements about the safety and reliability of the Delta Ignition Switch Vehicles that were either false or misleading.

94.     Old GM owed Plaintiff a duty to disclose the true safety and reliability of the Delta Ignition Switch Vehicles, because Old GM: (a) Possessed exclusive knowledge about the defects in the Delta Ignition Switch Vehicles; (b) Intentionally concealed the foregoing from Plaintiff; (c) Made incomplete representations about the safety and reliability of the Delta Ignition Switch Vehicles, while purposefully withholding material facts from Plaintiff that

contradicted these representations; and/or (d) Had duties under the TREAD Act and related regulations to disclose and remedy the defects.

95.    Because Old GM fraudulently concealed the defects in the Delta Ignition Switch Vehicles, Old GM Delta Ignition Switch Vehicle owners were deprived of the benefit of their bargain since the vehicles they purchased were worth less than they would have been if they were free from the defects. Had Old GM Delta Ignition Switch Vehicle owners been aware of the defects in their vehicles, they would have either not bought their Delta Ignition Switch Vehicles or would have paid less for them.

96.    Old GM's concealment of the defects in Plaintiff's vehicle was material to Plaintiff.

97.    Plaintiff suffered ascertainable loss caused by Old GM's misrepresentations and its concealment of and failure to disclose the defects in their vehicles. Had they been aware of the truth about the Delta Ignition Switch Defect, Plaintiff either would have paid less for their vehicles or would not have purchased or leased them at all. Plaintiff also incurred repair costs, as alleged above.

98.    As a direct and proximate result of Old GM's violations of the Mississippi CPA, Plaintiff has suffered injury-in-fact and/or actual damage for which New GM has successor liability.

99.    Plaintiff seeks actual damages in an amount to be determined at trial any other just and proper relief available under the Mississippi CPA.

## COUNT VII

## SUCCESSOR LIABILITY CLAIM FOR FRAUD BY CONCEALMENT

100.     Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

101.     This claim is brought as a successor liability claim, wherein Plaintiff is suing New GM for the conduct of Old GM. Under the ruling of the Second Circuit Court of Appeals, the bankruptcy Sale Order's "free and clear" provisions do not apply to Plaintiffs, so they are free to assert this successor liability claim without impediment from the Sale Order.

102.     Old GM concealed and suppressed material facts concerning the serious safety defects in Plaintiff's vehicles.

103.     Old GM sold Delta Ignition Switch Vehicles to Plaintiff without disclosing the defects, and indeed took active steps to conceal the defects from regulators and consumers.

104.     In order to conceal and suppress the defects from the owners and lessees of Delta Ignition Switch Vehicles, Old GM went so far as to instruct its employees not to use terms that could notify NHTSA or the public as to the existence of a safety issue.

105.     Old GM concealed and suppressed the defects in the Delta Ignition Switch Vehicles with the intent to deceive Plaintiff.

106.     Old GM did so in order to falsely assure purchasers, lessees, and owners of Delta Ignition Switch Vehicles that vehicles they were purchasing, leasing or already owned were safe, and to avoid the cost and negative publicity of a recall. The concealed information was material to consumers, both because it concerned the quality and safety of the Delta Ignition Switch Vehicles and because the information played a significant role in the value of the vehicles.

107.    Old GM had a duty to disclose the defects in the Delta Ignition Switch Vehicles because they were known and/or accessible only to Old GM; Old GM had superior knowledge and access to the facts; and Old GM knew the facts were not known to, or reasonably discoverable, by Plaintiff. Old GM also had a duty to disclose because it made many affirmative representations about the safety, quality, and lack of defects in Old GM vehicles, as set forth above, which were misleading, deceptive, and incomplete without the disclosure of the defects in the Delta Ignition Switch Vehicles. Having provided information to Plaintiff, Old GM had the duty to disclose not just the partial truth, but the entire truth. Finally, Old GM had monitoring and disclosure duties under the TREAD Act, as alleged above.

108.    Old GM actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits and avoid recalls that would hurt the brand's image and cost Old GM money, and it did so at the expense of Plaintiff.

109.    Plaintiff was unaware of these omitted material facts and would not have acted as he did had he known of the concealed and/or suppressed facts, in that they would not have purchased their Delta Ignition Switch Vehicles, or would have paid less for them. Plaintiff's actions were justified. Old GM was in exclusive control of the material facts and such facts were not known to the public, including Plaintiff.

110.    Because of the concealment and/or suppression of the facts, Plaintiff sustained damage. Plaintiff who purchased or leased Old GM Delta Ignition Switch Vehicles did not get the benefit of their bargain since the Defective Vehicles were worth less than they would have been without the defects. Had he been aware of the concealed defects that existed in the Delta Ignition Switch Vehicles, Plaintiff would have paid less for the vehicles or would not have purchased or leased it at all, and Plaintiff sustained repair damages.

111.    Accordingly, based on the conduct of Old GM for which it has successor liability, New GM is liable to Plaintiff for damages in an amount to be proven at trial.

112.    Old GM's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's rights and well-being to enrich Old GM. Old GM's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct by New GM in the future, which amount is to be determined according to proof.

**COUNT VIII**

**SUCCESSOR LIABILITY CLAIM FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY (MISS. CODE ANN. § 75-2-314)**

113.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

114.    This claim is brought as a successor liability claim, wherein Plaintiff is suing New GM for the conduct of Old GM. Under the ruling of the Second Circuit Court of Appeals, the bankruptcy Sale Order's "free and clear" provisions do not apply to Plaintiffs, so they are free to assert this successor liability claim without impediment from the Sale Order.

115.    Old GM was a merchant with respect to motor vehicles within the meaning of MISS. CODE ANN. § 75-2-104(1).

116.    Under MISS. CODE ANN. § 75-2-314, a warranty that the Delta Ignition Switch Vehicles were in merchantable condition was implied by law in the transactions when Plaintiff purchased or leased the vehicles from Old GM on or before July 9, 2009.

117.    The Delta Ignition Switch Vehicles, when sold and at all times thereafter, were not merchantable and not fit for the ordinary purpose for which cars are used. Specifically, the Delta Ignition Switch Vehicles were inherently defective in that there were defects in the ignition switch systems that cause sudden unintended stalling to occur, with the attendant shut down of

power steering and power brakes and the nondeployment of airbags in the event of a collision, thereby causing an increased likelihood of serious injury or death.

118.    New GM, as the successor to Old GM, was provided notice of these issues by numerous complaints filed against it, internal investigations, and by numerous individual letters and communications sent by Plaintiff and others before or within a reasonable amount of time after New GM issued the recall and the allegations of vehicle defects became public.

119.    As a direct and proximate result of Old GM's breach of the implied warranty of merchantability, Plaintiff has been damaged in an amount to be proven at trial.

## COUNT IX

### NEGLIGENCE, NEGLIGENCE PER SE, AND GROSS NEGLIGENCE

120.    Plaintiff realleges and incorporates by reference all paragraphs as though fully set forth herein.

121.    Defendants owed Plaintiff a duty to disclose the true safety and reliability of the Delta Ignition Switch Vehicles.

122.    Defendant had a duty to disclose the Delta Ignition Switch Defect because the information was known and/or accessible only to New GM who had superior knowledge and access to the facts, and New GM knew the facts were not known to or reasonably discoverable by Plaintiff.

123.    Defendant New GM breached these duties.

124.    As a direct and proximate cause of the negligence, negligence per se, and or gross negligence of Defendant New GM, Gemario Brooks suffered damages to be proven at trial.

125.    All of the above damages were directly and proximately caused by the aforementioned negligence, negligence per se, and or gross negligence of Defendant New GM

and were incurred without contributory negligence or assumption of the risk on the part of Gemario Brooks, or an opportunity for Gemario Brooks to avoid the accident.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectfully request that this Court enter a judgment against New GM and in favor of Plaintiff and grant the following relief:

A.      Declare, adjudge, and decree the conduct of New GM as alleged herein to be unlawful, unfair, and/or deceptive and otherwise in violation of law, enjoin any such future conduct, and issue an injunction under which the Court will monitor New GM's response to problems with the recalls and efforts to improve its safety processes, and will establish by Court decree and administration under Court supervision a program funded by New GM under which claims can be made and paid for Defective Vehicle owners and lessees' out-of-pocket expenses and costs;

B.      Award Plaintiff actual, compensatory damages or, in the alternative, statutory damages, as proven at trial;

C.      Award Plaintiff exemplary damages in such amount as proven;

D.      Award damages and other remedies, including, but not limited to, statutory penalties, as allowed by any applicable law, such as the consumer laws of the various states;

E.      Award Plaintiff and the Class Members their reasonable attorneys' fees, costs, and pre-judgment and post-judgment interest;

F.      Award Plaintiff restitution and/or disgorgement of New GM's ill-gotten gains relating to the conduct described in this Complaint; and

G.    Award Plaintiff such other further and different relief as the case may require or as determined to be just, equitable, and proper by this Court.

**RESPECTFULLY SUBMITTED**, this the 17th day of November, 2017.

GEMARIO C. BROOKS, Plaintiff

By:    GAMMILL MONTGOMERY, PLLC


By:    /s/ *Andrew Rueff*
       ANDREW RUEFF (MSB #103582)

OF COUNSEL:

GAMMILL MONTGOMERY, PLLC
221 Sunnybrook Road, Suite B
Ridgeland, Mississippi 39157
Email: andrew@gammillmontgomery.com
Tel:    (601) 487-2300
Fax:    (601) 420-2426
*Attorneys for the Plaintiff*